IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Nathaniel Caldwell III, #341823, | ) | C/A No.: 1:14-4277-RMG-SVH |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| Warden Roberto Roberts, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

Petitioner Nathaniel Caldwell III, is an inmate at the Allendale Correctional Institution of the South Carolina Department of Corrections. He filed this pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civ. Rule 73.02(B)(2)(c) (D.S.C.) for a Report and Recommendation on Respondent's motion for summary judgment and return filed on March 6, 2015. [ECF Nos. 16, 17]. After obtaining two extensions, Petitioner filed a response on May 7, 2015. [ECF No. 27]. On May 8, 2015, Petitioner filed a motion to stay this habeas action to exhaust his state remedies. [ECF No. 28]. Respondent opposed the motion to stay [ECF No. 29], and Petitioner replied in support of the stay. [ECF No. 30]. Respondent's motion for summary judgment and Petitioner's motion to stay are fully briefed and ripe for disposition.

After having carefully considered the parties' submissions and the record in this case, the undersigned recommends that Petitioner's motion to stay be denied and Respondent's motion for summary judgment be granted.

1

I.      Factual and Procedural Background

In 2007, a thirteen year-old Dorchester County girl (the victim) communicated to Petitioner that she intended to run away from home.  [ECF No. 17-1 at 9].  Petitioner drove to Dorchester County to pick up the victim and drive her back to Petitioner's Horry County apartment.  *Id.*  Petitioner kept the victim at his apartment for a period of time until the police were able to locate the victim using the tracking system on her phone.  *Id.* The State alleged that while the victim was at Petitioner's apartment, Petitioner raped and sodomized her.  *Id.*

Petitioner was indicted for kidnapping (2008-GS-26-2238) during the June 2008 term of the Horry County Court of General Sessions.  *Id.* at 104.[1]  Petitioner pled guilty to kidnapping on July 15, 2010, before the Honorable Larry B. Hyman, Circuit Court Judge, pursuant to a negotiated plea.  *Id.* at 3–5.  At the plea hearing, Petitioner was represented by W. Edward Chrisco, Esq.  *Id.* at 3.  In accordance with the negotiated plea, Judge Hyman sentenced Petitioner to 15 years' imprisonment and required him to register as a sex offender.  *Id.* at 14.

Petitioner filed an application for post-conviction relief (PCR) on July 5, 2011, in the Horry County Court of Common Pleas.  *Id.* at 16–23.  An evidentiary hearing was held on January 25, 2012 before the Honorable George C. James, Circuit Court Judge.

---

[1] At Petitioner's PCR hearing, Petitioner's trial counsel indicated Petitioner was originally indicted for contributing to the delinquency of a minor, and he was subsequently indicted for second-degree criminal sexual conduct and lewd act.  [ECF No. 17-1 at 81]. Those indictments do not appear in the record.

*Id.* at 28.  Petitioner was represented by Paul Archer, Esq.  *Id.*  By order dated March 30,

2012, Judge James denied Petitioner's PCR application.  *Id.* at 96–103.

Petitioner appealed from PCR to the South Carolina Supreme Court, which

transferred the case to the South Carolina Court of Appeals ("Court of Appeals")

pursuant to Rule 243(l), SCACR.    Petitioner was represented by Susan Hackett,

Appellate Defender with the South Carolina Commission on Indigent Defense, Division

of Appellate Defense.  [ECF No. 17-2 at 1].  Attorney Hackett filed a *Johnson*[2] petition,

raising the following issue:

> Did the post-conviction relief judge err in holding Petitioner's guilty plea
> was intelligently, voluntarily, and knowingly entered in light of Petitioner's
> testimony that trial counsel failed to explain that as a  part of the negotiated
> plea agreement Petitioner would be required to register as a sex offender for
> life?

*Id.* at 3.  Attorney Hackett also moved to be relieved as counsel.  *Id.* at 1.  Petitioner filed

a pro se response in which he raised the following issues:

> I.      Did the post-conviction relief judge err in finding no credible
> evidence that the Petitioner's counsel at his plea appearance of July 15,
> 2010, and prior performance was deficient?
>
> II.      Did the post-conviction relief judge err in finding that counsel did
> fully utilize his investigator to interview potential witnesses and trace and

---

[2] *Johnson v. State*, 364 S.E.2d 201 (S.C. 1988) (applying the factors of *Anders v. California*, 386 U.S. 738 (1967), to post-conviction appeals). *Anders* requires that counsel who seeks to withdraw after finding the "case to be wholly frivolous" following a "conscientious examination" must submit a brief referencing anything in the record that arguably could support an appeal, furnish a copy of that brief to the defendant, and after providing the defendant with an opportunity to respond, the reviewing court must conduct a full examination of the proceedings to determine if further review is merited. *Anders*, 386 U.S. at 744.

track down phone and text messaging records to provide and assist in a credible defense and verify authenticity of such?

III.    Did the post-conviction relief judge err in finding that Petitioner failed to prove that trial counsel had a plausible basis to object to the solicitor's recitation in her statement to the court that Petitioner "raped and sodomized . . ."; using such terms and language on record, although alleged, unsubstantiated, and unproven?

IV.    Did the post-conviction relief judge err in finding the petitioner pled guilty believing he was guilty and believing he would be convicted if in fact he had gone to trial?

V.    Did the post-conviction relief judge err in finding that counsel fully advised the petitioner of all plea options and defense options?

VI.    Did the post-conviction relief judge err in finding that counsel fully discussed the State's findings, evidence and discovery facts with the petitioner?

VII.    Did the post-conviction relief judge err in his comment and footnote in his opinion regarding the presentation of medical documentation to prove Petitioner's assertion of a distinctive mark?

[ECF No. 17-4].[3]  On September 25, 2014, the Court of Appeals filed an order denying the petition and granting counsel's request to withdraw.  [ECF No. 17-6].  The remittitur issued on October 13, 2014.  [ECF No. 17-8].

Petitioner filed this petition for a writ of habeas corpus on October 28, 2014.[4] [ECF No. 1-6 at 2].

---

[3] Petitioner also moved to supplement his pro se brief but the Court of Appeals denied the request.  [ECF Nos. 17-5 at 1, 17-7].

[4] The court received the petition on October 31, 2014, and docketed it on November 3, 2014. [ECF No. 1].  However, because Petitioner is incarcerated, he benefits from the "prison mailbox rule."  *See Houston v. Lack*, 487 U.S. 266 (1988).  The envelope containing the petition was deposited in the prison mailing system on October 28, 2014. [ECF No. 1-6 at 2].

## II.    Discussion

### A.    Motion to Stay

Petitioner moves to stay this proceeding and hold it in abeyance "so as to allow the Petitioner to protect his rights by first exhausting all unexhausted issues as well as unpreserved issues in the State Courts."  [ECF No. 28 at 1].  Respondent counters that Petitioner's state remedies are exhausted and the petition is ripe for review.  [ECF No. 29 at 1-2].  The undersigned agrees that the motion to stay should be denied because, as described in detail below, Petitioner has fully exhausted his state remedies.  Because the basis for Petitioner's motion to stay is refuted by the record, Petitioner's motion to stay is denied.

### B.    Federal Habeas Issues

Petitioner states the following grounds in his habeas petition:

**Ground One:**    Denial of direct appeal, Denial of procedural rights secured by due process, Denial of fundamental fairness, Violations of USCA 5, 6, 14, and Procedural errors.  Supporting facts: (A) Right to appeal lost due to Counsel's failure to <u>inquire</u> of Petitioner if he desired to appeal while in the court, after sentencing, and awaiting transfer from county facility to state facility.  (B) Right to appeal lost due to counsel's failure to <u>initiate</u> any proper appellate processes in light of the absence of a voluntary intelligent waiver.  (C)  Petitioner did not willingly, knowingly, voluntarily or intelligently waive his right to appeal.  (D)  Fundimentally unfair and procedural errors by PCR court and counsel (plea counsel) (PCR counsel) to not acknowledge the fact of the non-existance of valid waiver by petitioner to abandon appeal process.  (E)  Counsel and counsel's office refused to accept petitioners collect calls from State's R&E facility (Kirkland) while petitioner had six (6) days  remaining of the ten (10) available to seek appeal counsel also rejected and returned petitioner's written inquiry and request seeking appeal rejecting it as untimely.  (F)

5

Procedural right to appeal denied by counsel's error and failure to protect and properly preserved petitioner's right to appeal process. (G) Due process denied by procedural and fundamentally unfair procedures when PCR Court erred in not ordering a belated appeal in light of counsel's deficiency, the non-existance of a valid waiver, and petitioner stating three (3) times on record at the PCR Hearing he desired a trial.

**Ground Two:** Unlawfully incarcerated due to denial of due process – failing to meet the elements of convicted offense, actual innocence, insufficient proof and evidence to substantiate conviction, creating deprivation of liberty. Violation USCA 5, 6, 14. Supporting facts: (A) Unlawfully incarcerated as petitioner did not meet the elements of the convicted offense sentenced to, creating deprivation of liberty. (B) Denial of due process by plea counsel's ineffectiveness and PCR Court err in not overturning cognizable errors of not meeting critical elements. (C) Insufficient proof and evidence to substantiate conviction as both petitioner and alleged victim's statements verify in concurrence, of events of Leaving voluntarily. (D) Actual innocence of Petitioner not kidnapping alleged victim based on evidence and uncoerced statements of alleged victim given to authorities (officers, investigating case detective, forensic interviewer) of: 1) intent to leave, 2) voltariness and willingness to leave of her own free will, 3) knowledge of person and destination, 4) demonstrated unrestrained state of being, 5) ample opportunity to leave freely ("escape," getaway"); stated by alleged victim, and proven matters of record and fact in State's discovery – (E) Petitioner not informed or advised of the principles of substantive due process requiring the petitioner to meet each of the elements (7 total – each and every one) beyond reasonable doubt to be convicted (at a trial or a plea) and sentenced of the offense sentenced to.

**Ground Three:** Denial of Effective Assistance of Counsel Violation USCA 6, 14. Supporting facts: (A) Counsel's ineffectiveness by not providing, disclosing vital and critical information—details of charge, required meeting of critical elements or what the elements were denying petitioner due process and ability to facilitate an intelligent, well informed decision, sound discern ment, rendering the guilty plea unknowing uninformed and involuntary. (B) Effectiveness of Counsel by not protecting petitioner's right to due process and equal protection under the law by not objecting to improper remarks and

6

allegations made of the Petitioner by the solicitor, surmising unsubstantiated unproven allegations of criminal offenses against the petitioner as if actual fact and occurrences committed, and completely unrelated, irrelevant to the matter before the court (plea to kidnapping charge), as well as extremely prejudicial.    (C) Counsel's ineffectiveness—failing to object to the mandatory "collateral" consequence of sex registry, as no proven sexual connotation existed, nor evidence of a "sexual battery"; as there was never a RAPE KIT/CSC KIT done/completed with forensic evidence of documentation by a qualified SANE (Sexual Assault Nurse Examiner), nor any exam by qualified, certified medical doctor/expert.    (D) Denied effective assistance of counsel by counsel's not fully investigating and following up on all facts and circumstances given him by petitioner; or those documented and recorded in State's discovery exonerating petitioner of conviction of offense sentenced to.

**Ground Four:**    Improper comments, remarks allegations by solicitor procedural irregularities, subject matter jurisdiction coerced and induced plea, fraud, neglect and misconduct of counsel, failure to protect petitioners rights violation USCA 14.    Supporting facts: (A) Timeliness of "true billed" indictment (CSC II) as illegal and unconstitutionally obtained against petitioner and true billed during a non-existant term of convening by the Grand Jury deeming the indictment as fraudulent.  (B) Counsel's neglectful mindset toward such as not to challenge the indictment (as requested) and it's timeliness. (C) Counsel's fraudulent intent and misconduct to allow the continued procession by not seeking to quash and not protecting petitioners rights and due process. (D) Use of indictments having no substantial evidence (Lewd II and CSC II) and the threat of possible extremely lengthy sentencing for such – (3 indictments) against petitioner as leverage to induce and persuade the petitioner into taking plea offered by the state. (E) Improper remarks, allegations by Solicitor of the petitioner having prejudicial effect, making statements implying the petitioner having committed alleged, unproven, criminal offenses as a matter of actual fact and occurences and non-relevent completely unrelated to the matter before the court.

**Ground Five:**    Conviction obtained when plea was not made voluntarily with the understanding of the COMPLETE nature of the charge and all related /attached consequences of the plea, procedural irregularities

of the court.  Supporting facts: (A) Requirement of sex registry not clearly explained as a required, attached consequence to the offense of kidnapping as collateral "part of the package" counsequence (B) Petitioner never informed by counsel of the terms of the negotiations with the States insistence upon a "no-parole eligible" offense being the only way she would agree to or discuss any plea offer or terms indicating states vindictivness.   (C) Court's err (plea court/ appearance July 2010) when judge did not advise petitioner fully, unambiguously, of all involved consequences of plea regarding ineligibility of / for parole when convicted and sentenced.   (D) Procedural and fundamental err – the plea appearance judge not advising petitioner of the elements required to be met for conviction, rights of petitioner while before him, and what they were.

**Ground Six:**     Denial of due process, fundamental fairness, procedural errors of Post Conviction Relief Judge, Violations of USCA 5, 14. Supporting facts: (A) Err of PCR Judge not finding and ruling on the numerous cumulative errors proven of counsel, denial of petitioners US Constitutionally secured and guaranteed rights in his failure to overturn, or remand for trial, or otherwise find relief and so order in favor of Petitioner (B) Judge's error not to recognize and acknowledge petitioner's desire to have a trial as petitioner stated three (3) times his desire for such.  (C) Error not to recognize and acknowledge that petitioner did not voluntarily, knowingly, intelligently or willingly waive his right to appeal.  (D) Not ordering such appeal in light of petitioner's denial of due process (E) Fundamental fairness and procedural rights under the equal protection clause denied in the judges failure to find reason for objection to solicitor's improper invidious allegations, and his clear indication of realizing such allegations NOT being based on evidence or fact by stating "<u>apparently</u> based on statement.

[ECF No. 1-1] (errors in original).

C.     Standard for Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "Only disputes over facts that might affect the outcome of the suit

8

under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* At the summary judgment stage, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. Id. at 255.

      D.      Habeas Corpus Standard of Review

          1.      Generally

Because Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Noland v. French*, 134 F.3d 208, 213 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d)(1)(2); *see Williams v. Taylor*, 529 U.S. 362, 398 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 410. Moreover,

state court factual determinations are presumed to be correct and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

2.    Procedural Bar

Federal law establishes this court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254. This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States[,]" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim. *Id.* The separate, but related, theories of exhaustion and procedural bypass operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts. A habeas corpus petition filed in this court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

a.    Exhaustion

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

(b)    (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that-

(A)    the applicant has exhausted the remedies available in the courts of the State; or

(B)    (i) there is an absence of available State corrective process; or

(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c)    An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254.

The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies. 28 U.S.C. § 2254(b)(1)(A). In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal, or (2) by filing an application for PCR. State law requires that all grounds be stated in the direct appeal or PCR application. Rule 203 SCACR; S.C. Code Ann. § 17-27-10, *et seq.*; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767 (S.C. 1976). If the PCR court fails to address a claim as is required by S.C. Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP. Failure to do so will result in the application of a procedural bar by the South Carolina Supreme Court. *Marlar v. State,* 653 S.E.2d 266

(S.C. 2007).[5]  Furthermore, strict time deadlines govern direct appeal and the filing of a

PCR in the South Carolina courts.   A PCR action must be filed within one year of

judgment, or if there is an appeal, within one year of the appellate court decision. S.C.

Code Ann. § 17-27-45.

The United States Supreme Court has held that "state prisoners must give the state

courts one full opportunity to resolve any constitutional issues by invoking one complete

round of the State's established appellate review process"—which includes "petitions for

discretionary review when that review is part of the ordinary appellate review procedure

in the State." *O'Sullivan v. Boerckel,* 526 U.S. 838, 845 (1999).  This opportunity must

be given by fairly presenting to the state court "both the operative facts and the

controlling legal principles" associated with each claim.  *Baker v. Corcoran,* 220 F.3d

276, 289 (4th Cir. 2000) (internal citations omitted).  That is to say, the ground must "be

presented face-up and squarely." *Mallory v. Smith*, 27 F.3d 991, 995 (4th Cir. 1994)

(citation and internal quotation marks omitted).

The South Carolina Supreme Court has held that the presentation of claims to the

state court of appeals without more is sufficient to exhaust state remedies for federal

habeas corpus review.  *State v. McKennedy,* 559 S.E.2d 850 (S.C. 2002); *see also In re*

---

[5] In *Bostick v. Stevenson*, 589 F.3d 160, 162–65 (4th Cir. 2009), the Fourth Circuit found that, prior to the Supreme Court of South Carolina's November 5, 2007 decision in *Marlar*, South Carolina courts had not been uniformly and strictly enforcing the failure to file a motion pursuant to Rule 59(e), SCRCP, as a procedural bar.  Accordingly, for matters in which there was a PCR ruling prior to November 5, 2007, the court will not consider any failure to raise issues pursuant to Rule 59(e) to effect a procedural bar.

*Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases,* 471 S.E.2d 454 (S.C. 1990).    The *McKennedy* court held that *In re Exhaustion* had placed discretionary review by the South Carolina Supreme Court "*outside* of South Carolina's ordinary appellate review procedure pursuant to *O'Sullivan*." 559 S.E.2d at 854.    As such, it is an "extraordinary" remedy under *O'Sullivan*, "technically available to the litigant but not required to be exhausted." *Adams v. Holland*, 330 F.3d 398, 403 (6th Cir. 2003).    Because the South Carolina Supreme Court has held that presentation of certain claims to the Court of Appeals without more is sufficient to exhaust state remedies, a claim is not procedurally barred from review in this court for failure to pursue review in the South Carolina Supreme Court after an adverse decision in the Court of Appeals.

b.    Procedural Bypass

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner who seeks habeas corpus relief as to an issue failed to raise that issue at the appropriate time in state court and has no further means of bringing that issue before the state courts.    In such a situation, the person has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition.    Procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See Smith v. Murray*, 477 U.S. 527, 533 (1986).    Bypass can occur at any level of the state proceedings if the state has procedural rules that bar its courts from considering claims not raised in a timely fashion.

The South Carolina Supreme Court will refuse to consider claims raised in a

13

second appeal that could have been raised at an earlier time.  Further, if a prisoner has

failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is

barred from proceeding in state court.  If the state courts have applied a procedural bar to

a claim because of an earlier default in the state courts, the federal court honors that bar.

As the Supreme Court explains:

> . . . [state procedural rules promote] not only the accuracy and efficiency of
> judicial decisions, but also the finality of those decisions, by forcing the
> defendant to litigate all of his claims together, as quickly after trial as the
> docket will allow, and while the attention of the appellate court is focused
> on his case.

*Reed v. Ross*, 468 U.S. 1, 10–11 (1984).

### 3.     Cause and Actual Prejudice

Because the requirement of exhaustion is not jurisdictional, this court may

consider claims that have not been presented to the states courts in limited circumstances

in which a petitioner shows sufficient cause for failure to raise the claim and actual

prejudice resulting from the failure, *Coleman v. Thompson*, 501 U.S. 722, 750 (1991), or

by "prov[ing] that failure to consider the claims will result in a fundamental miscarriage

of justice." *Lawrence v. Branker,* 517 F.3d 700, 714 (4th Cir. 2008), *cert. denied,* 555

U.S. 868 (2008).   A petitioner may prove cause if he can demonstrate ineffective

assistance of counsel relating to the default, show an external factor which hindered

compliance with the state procedural rule, or demonstrate the novelty of a particular

claim.  *Id.*  Absent a showing of "cause," the court is not required to consider "actual

prejudice."  *Turner v. Jabe*, 58 F.3d 924 (4th Cir. 1995).  However, if a petitioner

14

demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. *Murray*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error.

### 4. Ineffective Assistance of Counsel Claims

To prevail on his ineffective assistance of counsel claim, Petitioner must show (1) that his trial counsel's performance fell below an objective standard of reasonableness, and (2) that a reasonable probability exists that but for counsel's error, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 694 (1984). The court must apply a "strong presumption" that trial counsel's representation fell within the "wide range of reasonable professional assistance," and the errors must be "so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *Harrington v. Richter*, 562 U.S. 86, 104 (2011). This is a high standard that requires a habeas petitioner to show that counsel's errors deprived him "of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. That the outcome would "reasonably likely" have been different but for counsel's error is not dispositive of the prejudice inquiry. Rather, the court must determine whether the result of the proceeding was fundamentally unfair or unreliable. *Harrington*, 562 U.S. at 104; *Strickland*, 466 U.S. at 694.

The United States Supreme Court has cautioned that "'[s]urmounting *Strickland*'s high bar is never an easy task[,]' . . . [e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Harrington*, 131

S.Ct. at 788 (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)).  When evaluating an ineffective assistance of counsel claim, the petitioner must satisfy the highly deferential standards of 28 U.S.C. § 2254(d) and *Strickland* "in tandem," making the standard "doubly" more difficult.  *Harrington*, 131 S.Ct. at 788.  In such circumstances, the "question is not whether counsel's actions were unreasonable," but whether "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standards." *Id.* The unreasonableness of the state court determination must be "beyond any possibility for fair-minded disagreement." *Id.* at 787.  "If this standard is difficult to meet, that is because it was meant to be." *Id.* at 786.  Section 2254(d) codifies the view that habeas corpus is a "'guard against extreme malfunctions in the state criminal justice system,' not a substitute for ordinary error correction through appeal."  *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n. 5 (1979)).

III.    Analysis

    A.    AEDPA's Statute of Limitations

Respondent argues Petitioner did not timely file the petition under the one-year statute of limitations created by the AEDPA substantially modified procedures for consideration of habeas corpus petitions of state inmates in the federal courts.  One of those changes was the amendment of 28 U.S.C. § 2244 to establish a one-year statute of limitations for filing habeas petitions.  Subsection (d) of the statute provides:

> (d) (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—

16

(A)    **the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review**;

(B)    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C)    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2)    **The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection**.

28 U.S.C. § 2244(d) (emphasis added).  Subsection (d)(1)(A) provides that the one-year statute of limitations begins to run on the date the petitioner's conviction becomes final, not after collateral review is completed.  *Harris v. Hutchinson*, 209 F.3d 325, 327 (4th Cir. 2000).  In South Carolina, a defendant must file a notice of appeal within 10 days of his conviction.  Rule 203(b)(2), SCACR.  Thus if a defendant does not file a direct appeal, his conviction becomes final 10 days after the adjudication of guilt.  *Crawley v. Catoe*, 257 F.3d 395, 398 (4th Cir. 2001).  If a defendant files a direct appeal and his conviction is affirmed, the conviction becomes final 90 days after the final ruling of the South Carolina Supreme Court.  *Harris*, 209 F.3d at 328, n.1 (noting conviction becomes

17

final on the expiration of the 90-day period to seek review by the United States Supreme Court from a state's highest court; *cf. Hill v. Braxton*, 277 F.3d 701 (4th Cir. 2002) (discussing procedure for district court's sua sponte timeliness analysis, noting limitations period begins to run when time for filing certiorari in the United States Supreme Court has elapsed).[6]

The statute of limitations is tolled during the period that "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). The statute of limitations is tolled for the entire period of the state post-conviction process, "from initial filing to final disposition by the highest state court (whether decision on the merits, denial of certiorari, or expiration of the period of time to seek further appellate review)." *Taylor v. Lee,* 186 F.3d 557, 561 (4th Cir. 1999). "Following the denial of relief in the state courts in state habeas proceedings, neither the time for filing a petition for certiorari in the United States Supreme Court, nor the time a petition for certiorari is considered by the United States Supreme Court, is tolled." *Crawley v. Catoe,* 257 F.3d at 399.

A state collateral proceeding must be "properly filed" for the statutory tolling provisions of 28 U.S.C. § 2244(d)(2) to apply. "[A]n application is 'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings. These usually prescribe, for example, the form of the document, the

---

[6] The *Hill* court did not discuss whether the state court that had dismissed the petitioner's appeal was the state court of last resort.

time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee." *Artuz v. Bennett*, 531 U.S. 4, 8 (2000) (footnote omitted). "When a postconviction petition is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)." *Pace v. DiGuglielmo*, 544 U.S. 408, 414 (2005) (quoting *Carey v. Saffold*, 536 U.S. 214, 226 (2002)). Generally, federal courts use Fed. R. Civ. P. 6(a) in computing periods of time under 28 U.S.C. § 2244(d)(2). *Hernandez v. Caldwell*, 225 F.3d 435, 439 (4th Cir. 2000).

In 2000, the Fourth Circuit held that the AEDPA's statute of limitations is not jurisdictional, but subject to the doctrine of equitable tolling. The court found that equitable tolling applies only in "those rare instances where—due to circumstances external to the [Petitioner's] own conduct—it would be unconscionable to enforce the limitation against the [Petitioner]." *Harris*, 209 F.3d at 330. In 2010, the United States Supreme Court squarely considered the issue and also held that § 2244 "is subject to equitable tolling in appropriate cases." *Holland v. Florida*, 560 U.S. 631, 644 (2010); *cf. Pace v. DiGuglielmo*, 544 U.S. at 418 n.8 (noting Court assumed without deciding that AEDPA's statute of limitations could be equitably tolled for purposes of that decision because respondent assumed it did). The *Holland* Court reiterated its prior holding in *Pace* that the statute would be equitably tolled "only if [the petitioner] shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland*, 560 U.S. at 659 (*quoting Pace*, 544 U.S. at 418)).

19

Under § 2244(d), the state bears the burden of asserting the statute of limitations. *Hill v. Braxton*, 277 F.3d 701, 704 (4th Cir. 2002). Petitioner then bears the burden of establishing that his petition is timely or that she is entitled to the benefit of the doctrine of equitable tolling. *Rouse v. Lee*, 339 F.3d 238, 246 (4th Cir. 2003).

1.     Timeliness

The undersigned finds Petitioner did not timely file his petition in this matter. The AEDPA one-year period of limitation begins to run at the "conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). Because Petitioner did not seek review by the United States Supreme Court, the AEDPA's one-year statute of limitations began running "at the expiration of the time" for seeking direct review in state court. 28 U.S.C. § 2244(d)(1)(A). Petitioner's judgment of conviction became final when his time for seeking review with the State's highest court expired. *See Gonzalez v. Thaler*, 132 S. Ct. 641, 653–54 (2012) (clarifying the Court's prior cases concerning 28 U.S.C. § 2244(d)(1)(A)).[7]

Petitioner pled guilty and was sentenced on July 15, 2010. [ECF No. 17-1 at 3-14].

---

[7] The Court's *Gonzalez* decision makes clear that, for a petitioner who did not seek review by filing a petition for writ of certiorari in that Court, no time is added to the expiration of the "time for seeking review from the State's highest court." 132 S.Ct. at 653–54. The Court contrasted its finding as to § 2244's statute of limitations with its cases interpreting the statute of limitations found in 28 U.S.C. § 2255(f)(1), which is applicable to *federal* prisoners seeking habeas relief. *See* 132 S. Ct. at 653 (noting *federal* judgment of conviction begins "'when this Court affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari,' or, if a petitioner does not seek certiorari, 'when the time for filing the certiorari petition expires.'") (quoting *Clay v. United States,* 537 U.S. 522, 527 (2003)).

Petitioner's sentence became final 10 days later, on July 25, 2010, and the statute of limitations began to run on the next day, July 26, 2010.

The one-year limitations period was tolled 344 days later when Petitioner filed his PCR application on July 5, 2011.  *See* 28 U.S.C. § 2244(d)(2).  The statute of limitations remained tolled until the Court of Appeals denied Petitioner's petition for a writ of certiorari on September 25, 2014. The statute of limitations resumed on September 26, 2014, and expired 21 days later, on October 16, 2014.  Petitioner did not file his habeas action until October 28, 2014—12 days after the statute of limitations had run. Consequently, Petitioner's habeas petition is untimely under 28 U.S.C. § 2244(d).

The undersigned finds that to appropriately calculate the date from which the statute of limitations begins to run after Petitioner's state collateral review, the court must apply the date of the Court of Appeals' denial of certiorari, and not the remittitur date. *See Gonzalez v. Thaler,* 132 S.Ct. 641, 653–54 (2012) ("We now make clear . . . [that] [t]he text of § 2244(d)(1)(A), which marks finality as of 'the conclusion of direct review or the expiration of the time for seeking such review,' consists of two prongs. . . .  For petitioners who pursue direct review all the way to this Court, the judgment becomes final at the 'conclusion of direct review'—when this Court affirms a conviction on the merits or denies a petition for certiorari.  For all other petitioners, the judgment becomes final at the 'expiration of the time for seeking such review'—when the time for pursuing direct review in this Court, or in state court, expires.  We thus agree with the Court of Appeals that because Gonzalez did not appeal to the State's highest court, his judgment

21

became final when his time for seeking review with the State's highest court expired").[8]

Therefore, petitioner is barred from federal habeas review unless he can

---

[8] There remains a dispute among the District of South Carolina opinions concerning whether (1) the decision date, (2) the remittitur date, or (3) the date of receipt of the remittitur controls for purposes of calculating the statute of limitations. *See, e.g.*, *Smith v. Warden, Lieber Corr. Inst.*, No. 4:13-3090-BHH, 2014 WL 5503529, at *6 (D.S.C. Oct. 30, 2014) ("The [PCR] appeal was denied by the South Carolina Supreme Court on April 17, 2013, at which time the statute of limitations resumed."); *Lewis v. Cartledge*, No. 1:12-2584-SB, 2014 WL 517469, at *2 (D.S.C. Feb. 6, 2014) ("The statute remained tolled until the South Carolina Supreme Court denied certiorari [in Petitioner's PCR appeal] on June 12, 2008. On [date], the statute began to run again . . . ."); *Ramirez v. Rawski*, No. 1:13-cv-00200-JMC, 2013 WL 5657655, at *7 (D.S.C. Oct. 15, 2013) ("The statute of limitations remained tolled until the South Carolina Supreme Court denied certiorari on January 12, 2012.") (citing *Gonzalez*); *Goodman v. McCabe*, No. 1:13-cv-594-RMG, 2013 WL 5530522, at *2 (D.S.C. Oct. 7, 2013) ("[T]he Court agrees with the Magistrate Judge's thorough analysis regarding the application of AEDPA's statute of limitations to the facts of this case and agrees that it operates to bar this action."), *adopting in part* No. 1:13-594-RMG-SVH, 2013 WL 5530520, at *3–6 (D.S.C. Sept. 6, 2013) ("The statute of limitations remained tolled until the South Carolina Supreme Court denied certiorari on August 5, 2010."); *cf. Johnson v. Warden, Lee Corr. Inst.*, No. 2:14-cv-0768 DCN, 2015 WL 1021115, at *9 (D.S.C. Mar. 9, 2015) ("The statute of limitations remained tolled during the pendency of the PCR action which began on April 13, 2009, and lasted until the Remittitur for the PCR Appeal was issued on June 20, 2013."); *Byers v. Warden of McCormick Corr. Inst.*, No. 8:14-cv-0969 DCN, 2015 WL 846544, at *8 (D.S.C. Feb. 26, 2015) (using date remittitur was issued); *Brannon v. Stevenson*, No. 9:13-cv-1792-RMG, 2014 WL 4954884, at *14 (D.S.C. Sept. 29, 2014) (using the date the remittitur was issued "out of an abundance of caution and in light of Petitioner's *pro se* status, and in order to allow for a more thorough analysis of Petitioner's claims"); *Bradshaw v. McCall*, No. 0:12-cv-03624-DCN, 2014 WL 463142, at *7 n.3 (D.S.C. Feb. 4, 2014) (using the date the remittitur was issued "out of an abundance of caution" but recognizing "that case law may support the assertion that [ ] a state PCR action is no longer pending for purposes of § 2244(d)(2) once a state appellate court has denied relief"); *Atchison v. Warden of Broad River Corr. Inst.*, No. 9:10-2059-SB-BM, 2011 WL 2728469, at *3 n.7 (D.S.C. May 26, 2011) (using date remittitur was issued); *Beatty v. Rawski*, No. 1:13-3045-MGL-SVH, 2015 WL 1518083, at *2–6 (D.S.C. Mar. 31, 2015)(rejecting use of decision date in the report and recommendation and holding the date the remittitur was filed in circuit court for purposes of calculating the statute of limitations).

demonstrate that he diligently pursued his rights, and that extraordinary circumstances prevented him from timely filing his habeas petition, which could equitably toll the statute of limitations.

### 2.    Equitable Tolling

To benefit from the doctrine of equitable tolling, Petitioner must show "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland* at 649 (quoting *Pace*, 544 U.S. at 418); *see also Rouse*, 339 F.3d at 246 (holding that, for equitable tolling to apply, petitioner must show that there was 1) an "'extraordinary circumstance,' 2) beyond his control or external to his own conduct, 3) that prevented him from filing on time.").

### a.    Diligence

The undersigned is of the opinion that Petitioner's untimely filing should not be excused by equitable tolling under *Holland's* two-pronged test. First, Petitioner has not demonstrated he was diligent in pursuing his rights below. In his response, Petitioner blames plea counsel for his failure to timely file this petition, arguing plea counsel's failure to file his direct appeal prevented him from tolling the statute of limitations. [ECF No. 27 at 6]. However, the record is devoid of any credible evidence that shows Petitioner diligently pursued a direct appeal after he pled guilty. At the plea hearing, the plea judge informed Petitioner that he had a right to appeal his plea and sentence within 10 days of the hearing. [ECF No. 17-1 at 14]. Plea counsel's PCR testimony indicates that Petitioner did not ask plea counsel to file an appeal until five or six weeks after the

plea hearing, at which time plea counsel informed Petitioner that the time for filing an appeal had passed. *Id.* at 90. Even if plea counsel were at fault for Petitioner's failure to file a direct appeal, Petitioner waited nearly a year after his sentencing before filing a PCR application in state court, which, alone, nearly exhausted his time to file a federal habeas action. Accordingly, Petitioner has failed to meet his burden of showing he diligently pursued his rights. *See Rouse v. Lee*, 339 F.3d at 246.

For these reasons, the undersigned is of the opinion that Petitioner has not satisfied the first-prong of *Holland's* two-pronged test for equitable tolling. *Holland* requires a petitioner to establish both prongs of the test to show entitlement to equitable tolling, so the court could end its analysis here.

b.    Extraordinary Circumstance

Independently, the undersigned finds Petitioner cannot satisfy the second prong of the test because he has not set forth facts that could demonstrate an "extraordinary circumstance" kept him from timely filing this action. Petitioner argues plea counsel's failure to file a direct appeal at Petitioner's request was an "extraordinary circumstance." [ECF No. 27 at 6]. However, the undersigned finds plea counsel's failure to file a direct appeal did not prevent Petitioner from pursuing his right to collaterally attack his sentence, which would also toll the statute of limitations. Although Petitioner filed a PCR application, he only did so near the end of the one-year statute of limitations. Petitioner has not presented any facts sufficient to permit a finding of an extraordinary circumstance that could entitle him to equitably toll the AEDPA's statute of limitations.

Accordingly, the undersigned finds the petition should be dismissed on statute of limitations grounds. The filing was untimely, and Petitioner has not presented facts sufficient to support his argument that the limitations period should be equitably tolled. *See Harris*, 209 F.3d at 330 (noting the petitioner has the burden of showing equitable tolling). The undersigned recommends that Respondent's motion for summary judgment be granted.

Having found that the statute of limitations bars Petitioner's § 2254 petition, the undersigned is normally precluded from addressing the merits of his claims. *See Kornahrens v. Evatt*, 66 F.3d 1350 (4th Cir. 1995) (finding that once a claim is determined to be procedurally barred, the court should not consider the issue on its merits). However, in the event the district judge finds the petition is timely,[9] the undersigned provides a merits review.

B.    Merits Review

    1.    Ground One

In Ground One, Petitioner argues he was denied the right to appeal his plea and sentence. This encompasses several different arguments: (1) that plea counsel was ineffective for failing to advise Petitioner about his appellate rights and for failing to initiate an appeal; (2) that Petitioner did not knowingly, voluntarily, and intelligently

---

[9] If the court uses the remittitur date (October 13, 2014), this action would be timely. As detailed above, the statute of limitations ran for 344 days until it was tolled by Petitioner filing his PCR action. Petitioner then had 21 days within which to file this habeas petition after the statute of limitations resumed on October 14, 2014. Petitioner filed this action on October 28, 2014, 14 days after the statute of limitations began to run again.

waive his right to appeal; and (3) that the PCR judge erred in refusing to grant Petitioner a belated direct appeal.

Respondent argues these claims were not raised to and ruled on by the PCR judge, and therefore, the claims are procedurally barred. The undersigned agrees. Although testimony was presented on these issues at the PCR hearing, [ECF No. 17-1 at 63–65, 89–90], the issues were not ruled on by the PCR judge, raised in a Rule 59(e) motion, or raised in Petitioner's PCR appeal. *See Plyler v. State*, 424 S.E.2d 477, 478 (S.C. 1992) (providing that in order for an issue to be preserved for review on appeal from a PCR action, the issue must have been raised to and ruled on by the PCR judge); *Marlar*, 653 S.E.2d at 267 (stating issues are not preserved for review where the PCR applicant fails to make a Rule 59(e) motion asking the PCR judge to make specific findings of fact and conclusions of law on his allegations); *McCray v. State*, 455 S.E.2d 686, n.1 (S.C. 1995) (stating issues not raised in a petition for a writ of certiorari to the Supreme Court are not preserved for appellate review). Consequently, these issues are procedurally barred from federal habeas review unless Petitioner can show cause and actual prejudice, or actual innocence. *See Smith v. Murray*, 477 U.S. at 533; *Coleman*, 501 U.S. at 750. As to Petitioner's allegation that the PCR judge erred in finding Petitioner was entitled to a belated direct appeal, claims of defects in collateral review proceedings are not cognizable in federal habeas actions. *See Lawrence*, 517 F.3d at 717 ("[A] petitioner is not entitled to federal habeas relief because the assignment of error relating to those post-conviction proceedings represents an attack on a proceeding collateral to detention and

26

not to the detention itself.") (*citing Bryant v. Maryland*, 848 F.2d 492, 493 (4th Cir. 1988)).

Petitioner asserts he can show cause to excuse the procedural bar. [ECF No. 27 at 14]. Specifically, Petitioner asserts PCR counsel's ineffectiveness in preserving his PCR issues for appellate review should excuse the procedural bar pursuant to *Martinez v. Ryan*, 132 S. Ct. 1309 (2012). *Id.*

In *Martinez*, the Supreme Court held that a habeas corpus petitioner asserting claims for ineffective assistance of counsel can demonstrate sufficient cause to excuse a procedural default upon a showing that counsel in the initial-review collateral proceeding was ineffective in failing to raise a claim that should have been raised below. *See Martinez*, 132 S.Ct. at 1318 (internal citations omitted). In a later case describing the *Martinez* decision, the court stated,

> We consequently read *Coleman* as containing an exception, allowing a federal habeas court to find "cause," thereby excusing a defendant's procedural default, where (1) the claim of "ineffective assistance of trial counsel" was a "substantial" claim; (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" review proceeding in respect to the "ineffective-assistance-of-trial-counsel claim"; and (4) state law *requires* that an "ineffective assistance of trial counsel claim . . . be raised in an initial-review collateral proceeding."

*Trevino v. Thaler*, 133 S. Ct. 1911, 1918 (2013) (citing *Martinez*, 132 S. Ct. at 1318–19, 1320–21)). A "substantial" claim is one that has "some merit." *Martinez*, 132 S. Ct. at 1318–19).

The undersigned finds Petitioner has failed to demonstrate cause under *Martinez*

27

because his underlying ineffective assistance of counsel claims are not substantial. Petitioner's underlying claims that plea counsel failed to advise Petitioner of his right to appeal and failed to initiate an appeal at Petitioner's request are refuted by the record. At the plea hearing, the plea judge informed Petitioner that he had the right to appeal his guilty plea within 10 days. [ECF No. 17-1 at 13-14]. At the PCR hearing, plea counsel testified Petitioner did not ask him to file an appeal until five or six weeks after the plea hearing. [*Id.* at 90]. The record shows Petitioner was aware of his right to appeal within 10 days and did not ask for counsel to initiate an appeal until after the 10-day period. Further, even if plea counsel were deficient, Petitioner failed to demonstrate prejudice under *Strickland* because he has not asserted a meritorious issue that could have been raised on appeal. *See Davis v. Sec'y for Dep't of Corrs.*, 341 F.3d 1310, 1316 (11th Cir. 2003) ("Accordingly, when a defendant raises the unusual claim that trial counsel, while efficacious in raising an issue, nonetheless failed to preserve it for appeal, the appropriate prejudice inquiry asks whether there is a reasonable likelihood of a more favorable outcome on appeal had the claim been preserved."). Accordingly, PCR counsel was not ineffective for failing to preserve these claims for appellate review because the claims were not substantial. Consequently, Petitioner failed to show cause under *Martinez* to excuse the procedural bar.

   2.    Ground Two

In Ground Two, Petitioner argues he was denied due process because the State

28

presented insufficient evidence of his guilt as to each element of the charged offense.[10]

Respondent moves for summary judgment as to this claim, arguing the PCR judge's

decision was an appropriate application of the *Strickland* test.

Initially, the undersigned notes Ground Two was not raised to any state court on

direct or collateral review, and accordingly, the claim should be procedurally barred from

federal habeas review.[11]  *See Smith v. Murray*, 477 U.S. at 533.  However, procedural bar

is an affirmative defense that may be waived if not raised in the District Court.  *See Gray*

*v. Netherland*, 518 U.S. 152, 165–166 (1996); *see also Jenkins v. Anderson*, 447 U.S.

231, 234 (1980).  Because Respondent has not asserted that Ground Two is procedurally

barred, and also because Petitioner has not had the opportunity to respond to an argument

that this claim is barred from review, the court will address Respondent's argument that

Petitioner's claim is without merit.

The undersigned finds Ground Two is without merit because Petitioner admitted

his guilt during the plea colloquy such that the State was not required to present evidence

to prove his guilt in a trial.  Claims that the State presented insufficient evidence of guilt

are cognizable in federal habeas actions, where a defendant was convicted at a trial.  *See*

_____

[10] To the extent Petitioner alleges any facts in Ground Two concerning the voluntariness
of his plea, the undersigned has considered those facts in its analysis of Grounds Three
and Five.

[11] The undersigned is not persuaded by Respondent's assertion that the "gist" of
Petitioner's claims in Ground Two were addressed by the PCR judge.  The PCR judge
only addressed Petitioner's claims that plea counsel was ineffective for failing to
investigate and properly advise Petitioner, causing his plea to be involuntary.  [ECF No.
17-1 at 102].

29

*Jackson v. Virginia*, 443 U.S. 307, 316–17 (1979) (providing that the Fourteenth Amendment presupposes as an essential element of due process that no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof—defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense, and where such a conviction occurs in state courts, the conviction cannot constitutionally stand).  Therefore, Petitioner's claim is without merit because he pled guilty, and Respondent is entitled to summary judgment on Ground Two.

3.    Grounds Three and Five

In Grounds Three and Five, Petitioner argues his plea was not entered intelligently and voluntarily.  Specifically, he claims plea counsel was ineffective because: (1) he did not explain the details of the charges against him; (2) he failed to explain to him that if he plead guilty, he would have to register as a sex offender; (3) he did not investigate the facts; and (4) he did not inform him that kidnapping was a "no parole" offense. Respondent argues the PCR judge appropriately applied *Strickland*.

At the plea hearing, the solicitor announced that Petitioner intended to plead guilty to kidnapping pursuant to a negotiated sentence that required him to be imprisoned for 15 years and to be placed on the sex offender registry.  [ECF No. 17-1 at 5].  In a colloquy with the plea judge, plea counsel stated he explained to Petitioner the nature of the charged offense and reviewed and explained the discovery materials with him.  *Id*. at 5–6. Petitioner affirmed plea counsel's statements thereafter and indicated he was aware of the State's evidence against him and his possible defenses, and that after consulting with plea

30

counsel, he believed the State had sufficient evidence to convince a jury that he was guilty of kidnapping beyond a reasonable doubt. *Id.* at 6.

> At the guilty plea hearing, the solicitor proffered the following facts:

> [O]n that date this defendant who had been communicating with a child who had just turned 13 on June 14th of '07 and did learn that she was intending to run away, he said he would come, he would pick her up. He did pick her up out of Dorchester County, bring her here to Horry County back to his place and apartment and did keep the child there at which point he did rape the child and sodomized her over a period of time until the tracking system on her phone was able to be pinged and they were, the police were able to find her and take her to safety.

[ECF No. 17-1 at 9]. When asked by the plea judge if the solicitor's recitation of the facts was accurate, the following colloquy ensued:

> [Plea Judge]: Is that what happened, Mr. Caldwell?

> [Plea Counsel]: Your Honor, my client states that he did kidnap the child.

> [Plea Judge]: All right, and that's the only thing that I'm concerned about, were the allegations concerning the taking and abducting of the child true?

> [Petitioner]: Yes, sir, I did use bad judgement.

> [Plea Judge]: All right, sir, what I wanted to know if you're guilty of that offense?

> [Petitioner]: Yes, sir.

*Id.* at 9–10.

Finally, the plea judge warned Petitioner that because the plea was negotiated, he could only accept or reject the 15-year sentence and requirement that Petitioner register as a sex offender. *Id.* at 11–12. Petitioner indicated he understood the plea judge's warning. *Id.* at 12. The plea judge accepted the plea, stating, "I find that this plea has a

31

substantial, factual basis, it's made freely, voluntarily, knowingly, and intelligently, after the advice of a very competent attorney with whom he says he's satisfied and I will accept his plea and I will follow the negotiations." *Id.* at 14.   The plea judge sentenced Petitioner to 15 years' imprisonment and required Petitioner to register as a sex offender. *Id.*

At the PCR hearing, Petitioner testified plea counsel informed him that the State had incriminating DNA evidence, but that plea counsel never showed him a DNA report. *Id.* at 33.  Later in the hearing, Petitioner admitted having a copy of the discovery before trial. *Id.* at 72.  Petitioner also testified that he did know that by pleading guilty he would have to register as a sex offender.  *Id.* at 37.  Petitioner testified he would not have pled guilty, and instead would have gone to trial, had he known that would have to register as a sex offender.  *Id.* at 38.  Petitioner stated he did not speak up at the plea hearing when the solicitor and judge mentioned that the negotiated plea required Petitioner to register as a sex offender because he thought plea counsel would speak up for him. *Id.* at 43–44.

Plea counsel testified he discussed and reviewed with Petitioner the indictments, the elements and punishments of each offense, Petitioner's rights and defenses, the State's burden and version of the facts, and the discovery, including the DNA report. *Id.* at 82–83.  Plea counsel claimed he explained to Petitioner that if he were convicted of kidnapping, he would likely be required to register as a sex offender.  *Id.* at 82.  Plea counsel testified he used an investigator to contact the victim and the victim's mother and to obtain Petitioner's texting records from his mobile carrier.  *Id.* at 85.  Plea counsel

further testified Petitioner asked him to work out a plea deal and that it was ultimately

Petitioner's decision to accept the negotiated plea.  *Id.* at 88–89.  He further testified

Petitioner wanted a plea deal because Petitioner wanted to avoid a trial.  *Id.* at 88.

The PCR judge found Petitioner failed to prove trial counsel was ineffective, as

follows:

> This Court finds no credible evidence of any ineffective assistance of
> counsel that rendered the Applicant's plea involuntary: This Court finds
> that the Applicant pled guilty because he was guilty and because he
> believed he would be convicted if he went to trial, especially considering
> the DNA evidence and the fact that his nearly two-year flight could be
> considered evidence of guilt.  This Court finds no persuasive reasons why
> the Applicant should be allowed to depart from the truth of the statements
> he made at his guilty plea. *See Crawford v. U.S.*, 519 S.E.2d 347 (4th Cir.
> 1975); *Edmonds v. Lewis*, 546 F.2d 566 (4th Cir. 1976).  In that vein, in
> light of counsel's testimony that the Applicant wished to plead guilty and
> avoid a trial, this Court did not find any credible evidence that the
> Applicant would have elected to go to trial on all three charges, including
> CSC with a minor in the second degree, lewd act, and kidnapping.

*Id.* at 102.

The undersigned finds the PCR judge's decision is not contrary to, or an

unreasonable application of, clearly established federal law.  Petitioner failed to show

counsel was deficient during the plea process.  *See Hill v. Lockhart*, 474 U.S. 52, 58–59

(1985) (stating that to prove counsel was ineffective during the plea process, the

defendant must show counsel's representation fell below an objective standard of

reasonableness so that the plea represented a voluntary and intelligent choice among the

alternative courses of action open to the defendant) (citing *North Carolina v. Alford*, 400

U.S. 25, 31 (1970)).  The record shows plea counsel informed Petitioner of the charges he

faced, the elements the State was required to prove, the evidence the State had against Petitioner, the potential punishments he faced, and the consequences of pleading guilty or going to trial. Petitioner's claim that he was not aware that he would have to register as a sex offender if he pled guilty is refuted by plea counsel's PCR testimony and by the plea hearing transcript. The evidence supports the PCR judge's finding that plea counsel was not deficient in his representation of Petitioner and that Petitioner was fully informed so that he could make a voluntary and intelligent choice to plead guilty or go to trial. *See Hill*, *supra*.

Further, Petitioner failed to demonstrate prejudice from plea counsel's alleged deficient performance because he did not provide credible evidence that he would have gone to trial, but for plea counsel's alleged errors. *See Hill*, 474 U.S. at 58–59 (stating that for an applicant to prove he was prejudiced by counsel's performance in the plea process, he must show that there is a reasonable probability that, but for counsel's errors, the defendant would not have pled guilty and would have insisted on going to trial). Plea counsel's testimony that Petitioner wanted to plead guilty to avoid a trial refutes Petitioner's claim that he would have proceeded to trial. Accordingly, the PCR judge's decision was not contrary to, and did not involve an unreasonable application of, the *Strickland* test. Respondent is entitled to summary judgment as to Grounds Three and Five.

4.    Ground Four

In Ground Four, Petitioner alleges violations of various constitutional provisions

34

because of irregularities or defects in the indictment process.

Initially, as discussed in the undersigned's analysis in Ground Two, the undersigned rejects Respondent's assertion that this claim was ruled on by the PCR judge.[12]  Accordingly, this claim should be procedurally barred from federal habeas review because it was not raised in Petitioner's collateral review proceedings.  *See Smith v. Murray*, 477 U.S. at 533.  However, Respondent has waived the affirmative defense of procedural bypass by not arguing in its responsive pleading that this claim is procedurally barred.  *See Gray v. Netherland*, 518 U.S. at 165–166.

Regardless, the undersigned finds Petitioner waived any claims relating to his indictments when he pled guilty.  *See Tollett v. Henderson*, 411 U.S. 258, 267 (1973) ("When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.  He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann*.") (citing *McMann v. Richardson*, 397 U.S. 759, 770 (1970)); *see also Menna v. New York*, 423 U.S. 61, n.2 (1975) ("A guilty plea, therefore, simply renders irrelevant those constitutional violations not logically inconsistent with the valid establishment of factual guilt and which do not stand in the way of conviction if factual guilt is validly established.").  In South Carolina, indictments are notice documents,

---

[12] The undersigned is unable to find any mention of this issue in Petitioner's PCR action.

intended to inform defendants of the charges against them. *See State v. Smalls*, 364 S.E.2d 754, 756 (S.C. 2005) ("The primary purposes of an indictment are to put the defendant on notice of what he is called upon to answer, i.e., to appraise him of the elements of the offense and to allow him to decide whether to pled guilty or stand trial.") (citing Evans v. State, 611 S.E.2d 510 (S.C. 2005)). Because any irregularities in the indictments have no effect on Petitioner's factual guilt or plea counsel's advice, Petitioner has waived his right to challenge any constitutional deprivations resulting from defects in the indictments by pleading guilty. *See Tollett*, 411 U.S. at 267. Accordingly, Respondent is entitled to summary judgment as to Ground Four.

>    5.    Ground Six

In Ground Six, Petitioner alleges he was denied due process of the law because of various errors made by the PCR judge. Respondent argues such claims are not cognizable in federal habeas actions. The undersigned agrees. Petitioner's claims in Ground Six are all based on alleged errors by the PCR judge in the PCR proceeding. However, § 2254 habeas petitions only contemplate relief for a collateral attack on the petitioner's detention. *See* § 2254(a)("The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."); *Lawrence v. Branker*, 517 F.3d at 717. Because Petitioner's claims in Ground Six allege errors in a collateral review proceeding and not a criminal proceeding resulting

in his detention, Petitioner fails to state a claim upon which relief may be granted by this Court.  Accordingly, Respondent is entitled to summary judgment as to Ground Six.

III.    Conclusion and Recommendation

For the foregoing reasons, the undersigned recommends that Respondent's motion for summary judgment be granted and the petition be dismissed with prejudice. Petitioner's motion to stay is denied.

IT IS SO RECOMMENDED.

January 29, 2016                              Shiva V. Hodges
Columbia, South Carolina                     United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see*  Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).