**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| Nathaniel Caldwell III, )<br><br>Petitioner, )<br><br>v. )<br><br>Warden Roberto Roberts, )<br><br>Respondent. ) | Civil Action No. 1:14-4277-RMG<br><br><br>**ORDER** |

This matter is before the Court on the Report and Recommendation of the Magistrate Judge, recommending summary judgment for Respondent and dismissal of the Petition for habeas relief. For the following reasons, the Court adopts the Report and Recommendation in part and declines to adopt it in part, grants summary judgment for Respondent, and dismisses the Petition.

## I. Background

In 2007, a thirteen year-old girl communicated to Petitioner that she intended to run away from home. Petitioner, then about fifty-four years old, responded by kidnapping the girl.[1] He kept her in his apartment, raping and sodomizing her, according to the State,[2] until police were able to rescue her by using the tracking system on her mobile phone.[3]

---

[1] The Court is unimpressed by Petitioner's objection that he thought the victim was sixteen and that he met her through an "adult only" internet site. (Obj. R. & R. 2.)

[2] The solicitor stated that Petitioner "raped and sodomized" the victim in the factual recitation at the plea hearing. Petitioner objects that these allegations are "unwarranted prosecutorial comments." (Obj. R. & R. 3–4.) Petitioner was indicted for sexual offenses against the victim but those charges were dropped as part of his plea bargain. Petitioner had an opportunity to contest these allegations; instead, he chose to plead guilty to kidnapping a 13 year-old girl.

[3] Petitioner objects to the "insinuation" that he "kept" the victim at his apartment, asserting that the "victim had numerous/ample opportunities to cry for help, leave . . . ." (Obj. R. & R. 3.) However, Petitioner *pled guilty* to kidnapping; the fact that he "kept" the victim is not an "insinuation"—it is an admitted fact.

Petitioner was indicted for kidnapping in June 2008. He was released on bond and absconded for two years, until he was apprehended. He pled guilty to kidnapping on July 15, 2010, and was sentenced to 15 years' imprisonment and required to register as a sex offender. On July 5, 2011, Petitioner filed an application for post-conviction relief ("PCR"). An evidentiary hearing was held, and his application was thereafter denied on March 30, 2012. Petitioner appealed to the South Carolina Supreme Court, which transferred his appeal to the South Carolina Court of Appeals. PCR appellate counsel raised one issue on appeal: Did the PCR court err in holding that Petitioner's guilty plea was voluntary. Petitioner also filed a pro se brief raising seven other issues (*see* R. & R. 3–4). On September 25, 2014, the Court of Appeals denied the appeal; its remittitur issued on October 13, 2014.

Petitioner filed the present Petition for a writ of habeas corpus on October 28, 2014, asserting six grounds for relief: (1) denial of direct appeal due to ineffective assistance of counsel, (2) insufficient evidence to sustain Petitioner's conviction, (3) ineffective assistance of counsel at trial, (4) due process and other constitutional violations due to defects with the indictment, (5) involuntary guilty plea, and (6) due process violations arising from errors by the PCR court. Respondent moved for summary judgment. On January 29, 2016, the Magistrate Judge issued the Report and Recommendation before the Court, to which Petitioner timely objected.

## II.    **Legal Standard**

### A.    **Report and Recommendation of the Magistrate Judge**

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261 (1976). The Court is charged with making a *de novo* determination of those portions of the Report and Recommendation to which specific objection is

-2-

made. The Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge. 28 U.S.C. § 636(b)(1).

When a proper objection is made to a particular issue, "a district court is required to consider all arguments directed to that issue, regardless of whether they were raised before the magistrate." *United States v. George*, 971 F.2d 1113, 1118 (4th Cir. 1992). However, "[t]he district court's decision whether to consider additional evidence is committed to its discretion, and any refusal will be reviewed for abuse." *Doe v. Chao*, 306 F.3d 170, 183 & n.9 (4th Cir. 2002). "[A]ttempts to introduce new evidence after the magistrate judge has acted are disfavored," though the district court may allow it "when a party offers sufficient reasons for so doing." *Caldwell v. Jackson*, 831 F. Supp. 2d 911, 914 (M.D.N.C. 2010) (listing cases).

## B.    Summary Judgment

Summary judgment is appropriate if a party "shows that there is no genuine dispute as to any material fact" and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In other words, summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Props.,* 810 F.2d 1282, 1286 (4th Cir. 1987). "In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities in favor of the nonmoving party." *HealthSouth Rehab. Hosp. v. Am. Nat'l Red Cross*, 101 F.3d 1005, 1008 (4th Cir. 1996). The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate that specific, material facts exist that

-3-

give rise to a genuine issue. *Id.* Under this standard, "[c]onclusory or speculative allegations do not suffice, nor does a 'mere scintilla of evidence'" in support of the non-moving party's case. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002) (quoting *Phillips v. CSX Transp., Inc.*, 190 F.3d 285, 287 (4th Cir. 1999)).

### C.    Habeas Corpus

#### 1.    Standard for Relief

Claims adjudicated on the merits in a state court proceeding cannot be a basis for federal habeas corpus relief unless the decision was "contrary to, or involved an unreasonable application of clearly established federal law as decided by the Supreme Court of the United States," or the decision "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(1), (2). Section 2254(d) codifies the view that habeas corpus is a "'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102–03 (2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.* at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)); *see also White*, 134 S. Ct. at 1702 (stating that "'[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement'") (quoting *Harrington*, 562 U.S. at 103).

Therefore, when reviewing a state court's application of federal law, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that

-4-

the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams v. Taylor*, 529 U.S. 362, 410 (2000); *see also White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (describing an "unreasonable application" as "objectively unreasonable, not merely wrong" and providing that "even clear error will not suffice") (internal quotation marks and citation omitted). Moreover, review of a state court decision does not require an opinion from the state court explaining its reasoning. *See Harrington* at 98 (finding that "[t]here is no text in [§ 2254] requiring a statement of reasons" by the state court). If no explanation accompanies the state court's decision, a federal habeas petitioner must show that there was no reasonable basis for the state court to deny relief. *Id.* Pursuant to § 2254(d), a federal habeas court must (1) determine what arguments or theories supported or could have supported the state court's decision; and then (2) ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding of a prior decision of the United States Supreme Court. *Id.* at 102. And state court factual determinations are presumed to be correct and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### 2.    Procedural Default

A habeas corpus petitioner may obtain relief in federal court only after he has exhausted his state court remedies. 28 U.S.C. § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997), *abrogated on other grounds by United States v. Barnette*, 644 F.3d 192 (4th Cir. 2011); *see also In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases*, 471 S.E.2d 454, 454 (S.C. 1990) (holding that "when the claim has been presented to the Court of Appeals or the Supreme Court, and relief has been denied, the litigant shall be deemed to have exhausted all available state remedies."). To exhaust his available state court

-5-

remedies, a petitioner must "fairly present[] to the state court both the operative facts and the controlling legal principles associated with each claim." *Longworth v. Ozmint*, 377 F.3d 437, 448 (4th Cir. 2004) (internal quotation marks and citation omitted).

Generally, a federal habeas court should not review the merits of claims procedurally defaulted (or barred) under independent and adequate state procedural rules. *Lawrence v. Branker*, 517 F.3d 700, 714 (4th Cir. 2008). For a procedurally defaulted claim to be properly considered by a federal habeas court, the petitioner must "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

### D.    Ineffective Assistance of Counsel

When claiming habeas relief due to ineffective assistance of counsel at trial, a petitioner must show (1) that his trial counsel's performance fell below an objective standard of reasonableness, and (2) that a reasonable probability exists that but for counsel's error, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 694 (1984). The Court must apply a "strong presumption" that trial counsel's representation fell within the "'wide range of reasonable professional assistance," and the errors must be "so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *Harrington*, 131 S. Ct. at 787. This is a high standard, one in which a habeas petitioner alleging prejudice must show that counsel's errors deprived him "of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. That the outcome would have been "reasonably likely" different but for counsel's error is not dispositive of the "prejudice" inquiry. Rather, the Court must determine whether the result of the proceeding was fundamentally unfair or unreliable. *Harrington*, 131 S. Ct. at 787–88; *Strickland*, 466 U.S. at 694.

-6-

The Supreme Court has cautioned that "'[s]urmounting *Strickland*'s high bar is never an easy task[,]' . . . [e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Harrington*, 131 S. Ct. at 788 (quoting *Padilla v. Kentucky*, 130 S. Ct. 1473, 1485 (2010)). When evaluating an ineffective assistance of counsel claim, the petitioner must satisfy the highly deferential standards of 28 U.S.C. § 2254(d) and *Strickland* "in tandem," making the standard "doubly" more difficult. *Id.* In such circumstances, the "question is not whether counsel's actions were unreasonable," but whether "there is any reasonable argument that counsel satisfied *Strickland*'s 'deferential standards." *Id.*

Courts are reluctant to characterize tactical or strategic decisions by trial counsel as ineffective assistance. *Carter v. Lee*, 283 F.3d 240, 249 (4th Cir. 2002). A "strong presumption" exists that counsel's actions were the function of trial tactics and not "sheer neglect." *Harrington*, 131 S. Ct. at 790. This rule, however, is not absolute where the purported strategic decision is based upon an error or ignorance of the law by trial counsel. *Wilson v. Mazzuca*, 570 F.3d 490, 502 (2nd Cir. 2009) (omissions based upon "oversight, carelessness, ineptitude or laziness" cannot be explained as "trial strategy"); *Ramonez v. Berghuis*, 490 F.3d 482, 488 (6th Cir. 2007) (a strategic choice made without a professionally competent investigation of the Petitioner's options is "erected upon . . . a rotten foundation" and is not entitled to deference).

## III.  Analysis

### A.    Statute of Limitations

The Magistrate Judge recommends that the Petition be dismissed as untimely filed. The Court disagrees and finds the Petition timely filed.

A petition for habeas corpus must be filed within one year of the latest of several triggering dates given by statute. 28 U.S.C. § 2244(d)(1). The most common triggering date is the denial of Petitioner's direct appeal to the state court of last resort. 28 U.S.C. § 2244(d)(1)(A). The one-

year limitations period accrues on the day following the date of state court of last resort's decision, not the date of issuance of its mandate or remittitur. *Gonzalez v. Thaler*, 132 S. Ct. 641, 654 (2012). Here, there was no direct appeal to the South Carolina State Supreme Court. In such cases, the triggering date is the expiration of the time for seeking such review. 28 U.S.C. § 2244(d)(1)(A). Regarding the present Petition, the time for seeking direct appeal expired on July 26, 2010,[4] and the habeas limitations period accrued on the next day, July 27, 2010.

Additionally, the one-year limitations is tolled during the pendency of PCR proceedings. 28 U.S.C. § 2244(d)(2). The PCR tolling period begins when an initial PCR application is properly filed in state court. *Artuz v. Bennett*, 531 U.S. 4, 8 (2000). It includes the time during which the denial of the PCR application is on appeal within state courts, including the time between the PCR court's denial of the application and the filing of a timely notice of appeal. *Evans v. Chavis*, 546 U.S. 189, 191, 198, 201 (2006). But it does not include certiorari review by the United States Supreme Court. *Lawrence v. Florida*, 549 U.S. 327, 329 (2007).

Petitioner filed his PCR application on July 5, 2011. The final state appellate decision affirming denial of his application was issued on September 25, 2014; the remittitur for that decision issued on October 13, 2014. If the tolling period ends on the date of decision, the Petition would be untimely, as the Magistrate Judge found. But, if the tolling period ends on the date of remittitur, it would be timely, as the Magistrate Judge also notes (R. & R. 25 n.9.)

The timeliness of the Petition therefore turns on the question of whether the date of decision or date of remittitur should be used for calculating the PCR tolling period. The Magistrate Judge

---

[4] Petitioner correctly objects that, because the ten-day period for an appeal ended on July 25, 2010, a Sunday, the time for his appeal lapsed on July 26, 2010, not July 25, 2010. (Obj. R. & R. 7); *see* Rule 263(a), SCACR. The extra day is not material to the Magistrate Judge's recommendation regarding the Petition's timeliness.

read *Gonzalez* to require that the date of decision and not the date of mandate or remittitur is used for calculating the accrual of the limitations period. (R. & R. 21 ("The undersigned finds that to appropriately calculate the date from which the statute of limitations begins to run after Petitioner's state collateral review, the court must apply the date of the Court of Appeals' denial of certiorari, and not the remittitur date. *See Gonzalez v. Thaler*, 132 S.Ct. 641, 653–54 (2012) . . . .").) That is error. The Supreme Court noted that *Gonzalez* applies to 28 U.S.C. § 2244(d)(1)(A)—calculations of the date of accrual of the one-year limitations period—but not to 28 U.S.C. § 2244(d)(1)(2)—calculations of the date on which PCR proceedings ended for tolling purposes:

> Gonzalez also argues that *Lawrence v. Florida*, 549 U.S. 327 (2007), supports his focus on the state court's issuance of the mandate because it referred to a mandate in determining when state postconviction proceedings were no longer pending. *Lawrence*, however, is inapposite. The case involved a different provision, 28 U.S.C. § 2244(d)(2), which by its terms refers to 'State' procedures.

*Gonzalez*, 132 S. Ct. at 654 n.10 (parallel citations omitted). In *Lawrence*, the Supreme Court held that "[s]tate review ends when the state courts have finally resolved an application for state postconviction relief. After the State's highest court has *issued its mandate* or denied review, no other state avenues for relief remain open." *Lawrence*, 549 U.S. at 332 (emphasis added).

Supreme Court authority therefore requires that the Court calculate the tolling period as starting when the PCR application was properly filed, July 5, 2011, and ending the day after the appellate remittitur issued, *i.e.*, October 14, 2014. PCR proceedings thus tolled the limitations period applicable to the Petition by 1197 days. Since the limitations period accrued on July 26, 2010, Petitioner had until November 5, 2014 to timely file a Petition for habeas relief. The Petition was filed on October 28, 2014. It was therefore timely filed.

The Magistrate Judge reviewed the merits of the Petition "in the event the district judge finds the petition is timely." (R. & R. 25.) As the present Petition was timely filed, the Court will proceed to consider the analysis of the merits presented in the Report and Recommendation.

## B. Merits of the Petition

The Court fully agrees with the analysis of the Magistrate Judge regarding the merits of the Petition. There is no merit to any of the grounds for relief Petitioner asserts.

### 1. Ground One

Petitioner argues that he was denied the right to appeal his plea and sentence. This argument is procedurally barred because the issue was not ruled on by the PCR court, raised in a Rule 59(e) motion, or raised in Petitioner's PCR appeal. *See Marlar v. State*, 653 S.E.2d 266, 267 (S.C. 2007); *McCray v. State*, 455 S.E.2d 686, 687 n.1 (S.C. 1995); *Plyler v. State*, 424 S.E.2d 477, 478 (S.C. 1992). Petitioner argues that ineffective assistance of PCR counsel in failing to preserve this issue for appellate review excuses his procedural default. But the record shows that the trial court advised Petitioner of his appellate rights, and the applicable 10-day time limit for filing an appeal, when he pled guilty. Trial counsel testified at the PCR hearing that Petitioner did not seek an appeal until five or six weeks after the plea hearing. There was no substantial issue to preserve for appellate review.

Petitioner objects that, although the trial court did inform him of his appellate rights, his trial counsel never asked him if he wished to appeal. But, as the Magistrate Judge found, Petitioner has failed to assert a meritorious issue that could have been raised on appeal. Petitioner objects that on appeal he would have raised "the meritorious issue of the misconduct of the Solicitor by stating unproven, unsubstantiated allegations as factual occurrences of crimes/offenses of 'rape' and 'sodomy' being committed by the Petitioner against the alleged victim." (Obj. R. & R. 15.) Petitioner's objection effectively concedes the Magistrate Judge's finding. The fact that the solicitor brought charges which were dropped in exchange for a plea on other charges—and so were never proven—is not evidence of any "misconduct" by the solicitor, ineffective assistance

by trial counsel, or constitutional error by the court accepting Petitioner's guilty plea. Rather, it is strong evidence that trial counsel very effectively represented Petitioner in plea negotiations.

### 2. Ground Two

Petitioner argues that he was denied due process because the State presented insufficient evidence of his guilt as to each element of the charged offense. This claim is without merit because Petitioner admitted his guilt and the facts establishing his guilt during the plea colloquy.

### 3. Grounds Three and Five

Petitioner argues that his guilty plea was not entered voluntarily because trial counsel did not explain the charges against him, did not explain that he would have to register as a sex offender, and did not explain to him that he would be ineligible for parole. He also argues that trial counsel was ineffective for not explaining those facts to him. However, at the plea hearing, trial counsel stated that he explained the nature of the charges to Petitioner. Petitioner affirmed that statement in the plea colloquy. Petitioner has not since explained what, if anything, he did not understand about the offense of kidnapping. And the plea judge warned Petitioner on the record that he would have to register as a sex offender.

Neither Respondent's briefing nor the Report and Recommendation address Petitioner's claim that he was not informed that he would be parole-ineligible. Because this claim was raised in Petitioner's PCR appeal (Dkt. 17-2 at 6), the Court will address its merits. To justify relief, Petitioner must show that he would have gone to trial had he known he was pleading guilty to a parole-ineligible offense. *See Hill v. Lockhart*, 474 U.S. 52, 60 (1985) (requiring that a habeas petitioner allege that had he been "correctly informed about his parole eligibility date, he would have pleaded not guilty and insisted on going to trial"). The PCR court found that trial counsel negotiated "a favorable plea bargain" and that Petitioner "pled guilty because he was guilty and because he believed he would be convicted if he went to trial, especially considering the DNA

evidence and the fact that his nearly two-year flight could be considered evidence of guilt." (Dkt. No. 17-1, 101–02.)

Petitioner objects that DNA evidence in his case was not further analyzed "for verification." (Obj. R. & R. 4.) That is understandable, given Petitioner's guilty plea. Petitioner also objects that, had trial counsel obtained more exculpatory evidence, he would not have pled guilty. (*See id.* 22.) That is, presumably, true to some degree, but imagining hypothetical evidence does not entitle Petitioner to habeas relief. If Petitioner were aware of possible exculpatory evidence, and he now claims that he was, then he should have exercised his right to present evidence at trial. Petitioner does not now claim that new evidence is available "that could not have been previously discovered through the exercise of due diligence." *See* 28 U.S.C. § 2254(e)(2)(ii).

The Court agrees with the Magistrate Judge's finding that the PCR court's determination of the facts was reasonable. Petitioner's claim is without merit.

### 4.    Ground Four

Petitioner argues that deficiencies with the indictments violated various constitutional provisions. Petitioner waived any claims relating to his indictments when he pled guilty. *Tollett v. Henderson*, 411 U.S. 258, 267 (1973).

### 5.    Ground Six

Petitioner argues that errors by the PCR court denied him due process of law. Such claims are not cognizable grounds for habeas relief. *Lawrence v. Branker*, 517 F.3d 700, 716–17 (4th Cir. 2008). Only constitutional violations in the criminal proceeding resulting in Petitioner's detention can justify habeas relief from that detention. A constitutional conviction is not set aside because of an error in state collateral review proceedings, since a "state prisoner has no federal constitutional right to post-conviction proceedings in state court." *Id.* at 717.

-12-

## IV.    Conclusion

For the foregoing reasons, the Court **ADOPTS IN PART AND DECLINES TO ADOPT IN PART** the Report and Recommendation of the Magistrate Judge (Dkt. No. 33), **GRANTS** Respondent's motion for summary judgment (Dkt. No. 16), and **DISMISSES** the Petition (Dkt. No. 1.)

### Certificate of Appealability

The governing law provides that:

(c)(2) A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right.

(c)(3) The certificate of appealability . . . shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

28 U.S.C. § 2253(c).  A prisoner satisfies the standard by demonstrating that reasonable jurists would find this court's assessment of his constitutional claims debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable. *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Rose v. Lee*, 252 F.3d 676, 683 (4th Cir. 2001).  In this case, the legal standard for the issuance of a certificate of appealability has not been met.  Therefore, a certificate of appealability is **DENIED**.

**AND IT IS SO ORDERED.**

Richard Mark Gergel
United States District Court Judge

March 7, 2016
Charleston, South Carolina